IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DEREK A. HICKS, ) | |
| ) | |
| Plaintiff, ) | NO. _____ |
| ) | |
| vs. ) | |
| ) | |
| ADVOCATE HEALTH, LLC d/b/a ) | |
| ADVOCATE HEALTH ADVISORS, ) | |
| ) | |
| Defendant. ) | |

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff Derek A. Hicks, by and through his undersigned counsel, files this Complaint for Declaratory Judgment, alleging as follows:

**I. INTRODUCTION**

1. This case involves a dispute over the restrictive covenants in the employment agreement by and between Plaintiff Derek A. Hicks ("Hicks") and Defendant Advocate Health, LLC d/b/a Advocate Health Advisors ("Advocate Health") and the interference by Advocate Health in the ability of Hicks to obtain other employment with UPMC Health Plan or another company without the threat of litigation by Advocate Health.

2. Advocate Health incorrectly claims that Hicks' employment with UPMC Health Plan will violate non-competition covenants in the employment agreement and Advocate Health has threatened legal action against UPMC Health Plan and Hicks if Hicks begins employment with UPMC Health Plan.

3. Per Advocate Health, Hick's employment with other companies will also violate the non-competition covenants in the employment agreement.

4. Hicks files this matter to obtain a declaratory judgment that the restrictive covenants in Section 5(b) of the employment agreement constitute an unlawful restriction on trade, are not reasonably necessary to protect Advocate Health's legitimate interests, and that the restrictive covenants set forth in Section 5(b) of the employment agreement are overly broad in time, geography, and subject so as to prevent him from earning a living.

## II.  PARTIES

5. Hicks is an individual who resides at 100 Majestic Drive, Butler, Pennsylvania, Butler, County.

6. Advocate Health is a Florida limited liability company with a principal place of business registered at 1845 Tamiami Trail S Unit Venice, FL 34293.

## III.  JURISDICTION AND VENUE

7. This is an action, in part, for declaratory judgment pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure.

8. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a), as this action is between citizens of different states and the amount in controversy exceeds $75,000.

9. Venue is proper in the Western District of Pennsylvania pursuant to 28 U.S.C. § 1391(b)(1), as the events giving rise to this action took place within the judicial district of the Western District of Pennsylvania.

## IV.  FACTUAL BACKGROUND

### A.  Hicks' Medicare Experience

10. Hicks has over twenty (20) years of work experience as a Medicare insurance professional in the areas of service, sales, broker management, and marketing, including his eight (8) months of employment with Advocate Health.

11. Hicks came to Advocate Health with his contacts and all the training necessary to perform the job that Advocate Health hired him to do. Hicks had no formal or informal training from Advocate in order to perform the work.

12. Advocate Health is a high-level field marketing organization that contracts with partner insurance carriers in the Medicare insurance market.

13. Advocate Health has myriad insurance brokers employed as independent agents who sell predominantly Medicare products and appurtenant services; in fact, UPMC Health Plan is one such carrier that has partnered with Advocate Health.

14. Advocate Health has independent local licensed agents across the United States and purports to do business in all fifty (50) states.

15. Hicks began employment with Advocate Health on or about June 12, 2023 as a Regional Manager for the Pennsylvania and Eastern Ohio regions.

16. As a Regional Manager, Hicks recruited, managed, trained and provided on-going support for a team of independent agents to market the Medicare products offered by Advocate Health, including the products of UPMC Health Plan.

17. Hicks was afforded the opportunity to directly sell Medicare products to Medicare beneficiaries, but this was in no way a significant part of his role for Advocate Health, as evidenced by the fact that direct sales is not mentioned or included as part of his Employment Agreement.

18. Hicks primarily worked out of his home office in Mars, Pennsylvania with travel to regional areas within Ohio, and Western and Eastern Pennsylvania.

### C. **Employment Agreement**

19. Hicks entered into an Employment Agreement with Advocate Health, dated May 25, 2023 (the "Employment Agreement"). A copy of the Employment Agreement is attached hereto as Exhibit A.

20. The Employment Agreement contains a non-competition covenant which states:

> Employee shall not, for 24 consecutive months after the date of termination of employment with the Company for any reason whatsoever, be employed or retained by, own, manage, consult, join, control, or act on behalf of any business providing the same or similar services as the Company. This covenant not to compete with the Company is limited to any counties within the State of Florida or any counties in any other state in which Employee was at the time of Employee's termination of employment actively engaged in the sale of health insurance products for individuals and groups which are sold by the Employer, or was engaged in recruiting or managing agents for the purpose of selling such products….

Exhibit A, § 5(b)(iv).

21. The non-competition restriction in the Employment Agreement is not enforceable.

22. The Employment Agreement also contains non-solicitation and non-interference restrictions which state that for 24 months after the date of termination of employment Employee shall not:

> solicit, accept, take away, propose, quote, sell, place, provide, service, renew or divert any Client Account that Employee either had some involvement in proposing, quoting, selling, placing, providing, servicing or renewing any Insurance Products or Services or about whom Employee received any Confidential Information, or any Prospective Client Account that Employee either had some involvement in proposing or quoting an Insurance Products or Services or about whom Employee received any Confidential Information…. or take any action intended to, or which reasonably may be expected to, cause any Client Account or Prospective Client Account, insurance carrier, wholesale broker, independent contractor or other person or entity with a material business relationship with the Company, to cease, reduce, or refrain from transacting business with the Company or its Affiliates.

Exhibit A, § 5(b)(i)-(ii).

23. The non-solicitation and non-interference restrictions are not enforceable.

**D.** **Advocate Health Objects to Hick's Employment with UPMC**

24. Hicks applied for and on January 5, 2024, was offered, a position with UPMC Health Plan as a Broker Manager, Associate, with a target start date of February 5, 2024.

25. As a Broker Manager, Associate, Hicks would manage brokers who sell UPMC Medicare products.

26. Hicks, believing in good faith that the position with UPMC Health Plan was not competitive with Advocate Health, on January 16, 2024, notified his Advocate Health supervisor of his two-week notice.

27. Advocate counteroffered to the UPMC Health Plan position, to which Hicks conveyed his declination.

28. At some point after Hicks declined the counteroffer, Advocate Health sent a cease-and-desist letter to UPMC Health Plan threatening litigation to enforce the restrictive covenants in the Employment Agreement.

29. UPMC Health Plan notified Hicks that his start date would be delayed given the objections and litigation threats raised by Advocate Health.

30. After the cease-and-desist, UPMC Health Plan's offer of employment to Hicks was made contingent upon Advocate Health releasing, in whole or in part, Hicks from the employment restrictions.

31. UPMC Health Plan made many attempts to reach out to Advocate Health regarding the interference with Hicks' employment with UPMC Health Plan, and those attempts went without a substantive response from Advocate Health.

32. Hicks and his counsel attempted to resolve the matter through email correspondence, and by sending a letter to Advocate Health on February 12, 2024, asking to discuss potential resolutions to the dispute to allow Hicks to be employed by UPMC Health Plan. A copy of the February 12, 2024, letter is attached hereto as Exhibit B.

33. To date, counsel for Advocate Health and Hicks have not been able to reach an agreement under which Advocate Health consents to Hicks' employment by UPMC Health Plan, without threatening litigation.

34. Advocate Health continues to maintain that Hicks' employment with UPMC Health Plan and other companies is prohibited by the Employment Agreement.

35. Advocate Health is using the restrictions in the Employment Agreement to prevent Hicks from securing other gainful employment and to interfere with Hicks' ability to secure new employment and earn a living.

## COUNT I: DECLARATORY RELIEF

36. Plaintiff restates and incorporates by reference Paragraphs 1 through 35 of his Complaint for Declaratory Judgment as if fully stated herein.

37. Under the Declaratory Judgment Act, this Court has the power to determine whether the parties are entitled to relief. 28 U.S.C. § 2201(a).

38. Under Section 2201(a), "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

39. Declaratory Judgment actions are justiciable if "there is a substantial controversy between parties having adverse legal interests, of sufficient immediacy and reality to warrant the

issuance of a declaratory judgment." *Diamond v. Pa. State Educ. Ass'n*, 399 F.Supp.3d 361, 403 (W.D. Pa. 2019) (quoting *St. Thomas-St. John Hotel & Tourism Ass'n v. Virgin Islands*, 218 F.3d 232, 240 (3d Cir. 2000)).

40. The non-competition restriction and other restrictions in the Employment Agreement are unenforceable.

41. The restrictions do not prohibit Hicks' employment with UPMC Health Plan or other companies.

42. Advocate Health wrongly claims that the non-competition and other restrictions in the Employment Agreement are enforceable and prohibit Hicks' employment with UPMC Health Plan and other companies.

43. Determining whether the non-competition and other restrictions in the Employment Agreement are unenforceable and whether they prohibit Hicks' employment with UPMC Health Plan or other companies will resolve all aspects of the controversy.

44. Determining whether the non-competition and other restrictions in the Employment Agreement are unenforceable and whether they prohibit Hicks' employment with UPMC Health Plan or another company will serve a useful purpose in clarifying the legal relations at issue.

45. In light of the dispute between the parties, Hicks has no alternative but to seek a declaratory judgment of the parties' rights, status, and legal relations.

## COUNT II: TORTIOUS INTERFERENCE

46. Plaintiff restates and incorporates by reference Paragraphs 1 through 42 of his Complaint for Declaratory Judgment as if fully stated herein.

47. The non-competition restriction and other restrictions in the Employment Agreement are not enforceable and did not prohibit Hicks' employment with UPMC Health Plan.

48. Hicks has prospective contractual and/or business relations with UPMC Health Plan.

49. Advocate Health has tortiously interfered with Hicks' prospective contractual and/or business relations with UPMC Health Plan by threatening litigation against Hicks and UPMC Health Plan.

50. Advocate Health has engaged in the aforementioned wrongful conduct with the purpose and intent to harm Hicks' relationships.

51. Advocate Health has acted without justification or privilege.

52. Advocate Health's wrongful conduct has caused Hicks to suffer damages.

53. As a direct and proximate result of the wrongful conduct, Hicks has suffered harm.

54. Advocate Health's conduct has been intentional, willful, malicious, and in reckless disregard of Hicks' rights, and therefore, the imposition of punitive damages is warranted.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff Derek A. Hicks respectfully requests that this Court enter an Order:

(a) Declaring Section 5(b)(iv) of the Employment Agreement unenforceable;

(b) Declaring Hicks' employment with UPMC Health Plan or another company does not violate any provisions of the Employment Agreement;

(c) Declaring Section 5(b)(iv) of the Employment Agreement unenforceable as applied to an offer of employment from UPMC Health Plan because it is unreasonably broad;

(d) Awarding Hicks compensatory and punitive and other damages as a result of Advocate Health's wrongful conduct; and

(e) Awarding Hicks reasonable costs, attorneys' fees, and any other relief this Court deems just and proper.

Dated: March 22, 2024

Respectfully submitted,

METZ LEWIS BRODMAN MUST O'KEEFE LLC

By: */s/Rachel D. Felton*
Rachel D. Felton, Esquire
PA. I.D. No.: 205929
Annamarie Truckley, Esquire
PA I.D. No.: 320474
444 Liberty Avenue, Suite 2100
Pittsburgh, PA 15222
412.918.1100 (office)
412.918.1199 (facsimile)
rfelton@metzlewis.com
atruckley@metzlewis.com

*Counsel for Plaintiff, Derek A. Hicks*